

# THE ATTORNEY GENERAL
## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

September 10, 1969

Honorable J. R. Singleton
Executive Director
Texas Parks and Wildlife Department
John H. Reagan Building
Austin, Texas 78701

Opinion No. M-465

Re: Requirements for
Permit to dredge
bay materials in
Gulf area alleged
to be privately
owned.

Dear Mr. Singleton:

Your request for our opinion sets out the following questions:

1.  When a bay bottom is shown to be privately-owned property, is a permit from the Parks and Wildlife Department required before bay bottom materials can be taken?

2.  If a permit is required for removal of bay bottom materials from privately-owned bay bottoms, can our Department make a charge for the material removed?

3.  Can the burden of proof as to the private ownership of a bay bottom area be placed upon the owner?

4.  If the permittee fails to provide reasonable proof of ownership to the satisfaction of our Department, can the Parks and Wildlife Commission charge for the removal of all bay bottom material from the entire area for which the permit is issued upon a presumption that all of the bay bottom area not shown to be the private property of the permittee is State-owned?

- 2307 -

You have advised us that you have a pending application for a permit to dredge the bottom or sedimentary materials from under a portion of Galveston Bay, which applicant contends is privately owned submerged land. You further advised us that this problem is one of considerable future consequence in handling dredging permits.

In view of the future importance to your department, we shall examine in some detail the nature of the interest and ownership of submerged tidal lands.

As a general principle, all parts of the Gulf of Mexico, including its bays and inlets, within the State of Texas are the property of the State of Texas. The legal history and pertinent statutes are clearly set out in City of Galveston v. Mann, 135 Texas 319, 143 S.W.2d 1028 (1940), at page 1032:

"It is pertinent here to review briefly the legal history of the State's ownership of the waters and submerged lands of the Gulf of Mexico. On December 19, 1836, it was enacted by the Senate and the House of Representatives of the Republic of Texas that from and after the passage of that Act, the civil and political jurisdiction of the Republic was declared to extend to the following boundaries, to wit:  'Beginning at the mouth of the Sabine river, and running west along the Gulf of Mexico three leagues from land, to the mouth of the Rio Grande, thence up the principal stream of said river to its source, thence due north to the forty-second degree of north latitude, thence along the boundary line as defined in the treaty between the United States and Spain, to the beginning.' Gammel's Laws of Texas, vol. 1, p. 1193.  In the Resolution of the Congress of the United States pertaining to the Annexation of the Republic of Texas as a State into the Federal Union, of date March 1, 1845, 5 Stat. 797, it was provided that the Republic retained for the State 'all the vacant and unappropriated lands lying within its limits,' subject only to the superior rights of navigation of the Federal government in the navigable waters of the State. Article 4026, R.C.S. 1925, which is a re-enactment of a prior statute, provides, in part, as follows:  'All of the public rivers,

bayous, lagoons, creeks, lakes, bays and inlets in this State, and all that part of the Gulf of Mexico within the jurisdiction of this State, together with their beds and bottoms, and all of the products thereof, shall continue and remain the property of the State of Texas, except in so far as the State shall permit the use of said waters and bottoms, or permit the taking of the products of such bottoms and waters, * * *.'

Article 7467, R.C.S. 1925, provides, in part, as follows: 'The waters of the ordinary flow and underflow and tides of every flowing river or natural stream, of all lakes, bays or arms of the Gulf of Mexico, and the storm, flood or rain waters of every river or natural stream, canyon, ravine, depression or watershed, within the State of Texas, are hereby declared to be the property of the State, * * *.'

(4) This Court in many important decisions has zealously guarded and enforced the rights of this State to the public lands of the State as provided and guaranteed to it in the foregoing resolutions of the Republic of Texas, the resolutions of the United States Congress appertaining to the annexation of the Republic of Texas, and in the Acts passed by the Legislature of the State of Texas. And by virtue of Article 5416, R.C.S. 1925, Vernon's Ann.Civ.St. art. 5416, which is a re-codification of an older statute, this Court has also many times held that the lands included 'in lakes, bays, and islands along the Gulf of Mexico within tidewater limits' are exempt from the unappropriated public domain set aside for public school purposes, and that all such lands are held in trust by the State for the benefit of all the inhabitants of the State. One of the latest expressions of the Court on that subject is contained in the case of the State of Texas et al v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1069, where, in an opinion written by Sharp, J., then a member of the Supreme Court Commission and now a member of this Court, it was said: 'The rule long has been established in this state that the state is the owner of the soil underlying

the navigable waters, such as navigable streams,
as defined by statute, lakes, bays, inlets, and
other areas within tidewater limits within its
borders.'" (Emphasis added.)

The line on shore between private and state ownership
is fixed at the mean higher high tide. Luttes v. State,
159 Tex. 500, 324 S.W.2d 167 (1958). A change in the tide
line inland causes the private owner to lose his land with-
out redress. State v. Balli et al, 144 Texas 195, 190 S.
W. 2d 71 (1944) and Luttes v. State, supra.

Therefore, in order for a private owner of land on the
shore line of the Gulf of Mexico, or one of its bays or in-
lets, to successfully claim land under tide waters, he must
satisy you of his ownership from the sovereign. City of
Galveston v. Mann, supra.

We are aware that a certain area on the east end of
Galveston Island within the R. C. Trimble and William
Lindsey survey includes "the flats running to and bor-
dering on the channel". City of Galveston v. Menard,
23 Tex. 349 (1859). We understand this area stopped at
the present 57th Street, whereas the applicant's tract
lies between 65th and 67th Street. In any event the
affidavit furnished you, and included with your request,
is insufficient. It fails to include any survey plat and
proof of title from the sovereign, among other reasons.

You are within your right to presume that all the beds
of a bay up to the line of mean higher high tide belong to
the State; and you have jurisdiction over the materials
therein under Articles 4053 and 4053d, Vernon's Civil Stat-
utes. Attorney General Opinion Nos. WW-151, (1957), M-84,
(1967), and M-368, (1969).

The subject of this opinion deals with tidewater or
"salt water" islands, reefs, bars, lakes and bays. Arti-
cle 4051, V.C.S., makes a distinction between lands with-
in tidewater limits and those under fresh water.

"All the islands, reefs, bars, lakes, and
bays within the tidewater limits from the most
interior point seaward co-extensive with the
jurisdiction of this State, and such of the
fresh water islands, lakes, rivers, creeks
and bayous within the interior of this State

> as may not be embraced in any survey of private
> land together with all the marl and sand of
> commercial value, and all the shells, mudshell
> or gravel of whatsoever kind that may be in or
> upon any island, reef, or bar, and in or upon
> the bottoms of any lake, bay, shallow water,
> rivers, creeks and bayous and fish hatcheries
> and oyster beds, within the jurisdiction and
> territory herein defined, are included within
> the provisions of this chapter, and are hereby
> placed under the management, control and pro-
> tection of the Commissioner....."
> (Emphasis added.)

An exclusion was made for those private lands embraced in any "survey of private land" under or within "fresh water". A permit would, therefore, not be required where fresh water is involved as distinguished from tidewater or salt water.

In view of the foregoing, we will summarize our answer:

To Question 1, our answer is "yes". Article 4051, Vernon's Civil Statutes, et seq., requires that you determine whether or not the proposed operation will have any injurious effect to oysters, oyster beds or fish in those or adjacent waters.

To Question 2, our answer is "no".

To Question 3, our answer is "yes". City of Galveston v. Mann, supra.

To Question 4, our answer is "yes". All bay bottom is presumed to be State-owned. Articles 4026, 5416 and 7467.

### SUMMARY

All dredging of bay bottoms requires a
permit from Texas Parks and Wildlife
Department. Ownership of bay bottoms
is in the State and burden of proof of

> private ownership is upon the claimant.
> Owners of land under fresh water, as
> distinguished from tidewater, are not
> required to apply for a permit, under
> the exclusion of Article 4051.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Vince Taylor
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Louis G. Neumann
Houghton Brownlee
James M. Mabry
Malcom Quick

MEADE F. GRIFFIN
Staff Legal Assistant

HAWTHORNE PHILLIPS
Executive Assistant

NOLA WHITE
First Assistant